WRIGHT, J.
1. Had Carter any lien on the land for his payments •on account of the purchase ? If there was a valid contract between Carter and Cook, he undoubtedly had a lien for the money paid upon *the purchase before the transfer to McGiffin. McGiffin comes [445 Into the title while Carter was in possession claiming right, and is •ehargeable with notice to the extent of his equity — no farther. What was that equity? It could, in the nature of things, only be a right to.a conveyance according to the contract. What the contract really was, is not disclosed to us. Did he comply, or show a ■disposition to comply ? Both before and after McGiffin took the title, he refused to pay for the land or discharge the claim of Smith, ■so that Smith was threatening to sell the land to make the money. McGiffin saved the property from sale. Did Carter then comply ■with his contract? No, he still refused; and McGiffin resorted to an ejectment as the best mode of compelling payment. Carter then became McGiffin’s tenant, and took from him a lease. After this, without regard to his landlord’s interest, and against a positive notice not to deal farther with Cook in the premises, he surrendered the contract to Cook, and took his personal responsibility for the advances. If before that time the land was responsible to him when he completed his contract, or was liable for his advances against a person coming into the title with notice of his equity, did that responsibility continue after be voluntarily surrendered it to Cook, and took his personal liability in its stead? We think not. His *456 claim now is not to enforce the original’ contract as a lien on the-land, but to enforce his new contract with Cook, made after Mc-Giffin’s right attached, with full notice of McGiffin’s rights, and in opposition to them. The award is not attached as a charge upon the land, in any view we take of the case.
2. Did a trust result from this purchase by McGiffin to Cook ?' As a general rule where one pays for land, and the title is taken to another, a trust results to him who paid the money. If Cook paid the money, a trust resulted to him. His interest was passed to McGiffin before the award. McGiffin is willing to complete the contract, and in a condition to do so if Carter will make it known and perform his part; but Carter refuses, and asks this court to make the new contract of Cook to pay him money of subsequent date to McGiffin’s rights, a charge upon the land. This we are not disposed to do. If he seeks equity, he must show a disposition to do equity himself. We cannot aid him in any combination with. Cook, to defraud McGiffin. The,utmost he can claim is to be let in to perform his original contract — that he does not ask.
3. Is the transaction between McGiffin and Cook fraudulent as. against creditors ? McGiffin’s object appears to be to secure a home, for his sister and her children, against the future improvidences of 446] *the husband and father. It did not contemplate cutting off any one then a creditor of Cook, or the protection of the property from his existing creditors; it had no object of injury to any one, and intended no fraud in law or fact. Why, then, was it not lawful ? McGiffin was ready to perform Cook’s agreement, but Carter refused, and stood out until the land was about to become forfeit,, and then, and not before, did McGiffin take the title to prevent a forfeiture. After this he was willing to comply with the contract,, but Carter still refused. He then transferred his interest to Cook,, relinquished to him, and took his responsibility for the consideration of the surrender. For this claim upon Cook, originating long after McGiffin acquired his right to the land, and got up in direct opposition to his interest, he asks a court of equity to charge upon the land; and to let in this equitable claim, he prays us to regard McGiffin’s purchase fraudulent. Whatever claim might result in favor of one who had been deceived into a credit of Cook by the appearance of ownership in the land resulting from mere occupancy by the family, even that pretext is not found to favor the complainant. Mc-Giffin’s purchase was not made to defraud creditors generally or Carter in particular. One of its objects was to fulfil Carter’s contract, which he refused to execute. The lien he had,, *457 be first'refused to assert, and then voluntarily surrendered. Even if McGiffin were held a mortgagee, and Carter claimed to be let in to redeem, he would be required to pay him what he advanced, or if refused, to have brought it into court. That he has not chosen to do, nor even expressed a willingness to do.
The bill is dismissed with costs to the defendant McGiffin.
[Constructive notice; Brooks v. Lange, 2 W. L. M. 12.]